THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAMION CZAR BOVELL, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | |
| Acting Commissioner of the | : | |
| Social Security Administration, | : | |
| Defendant | : | NO. 22-654 |

## MEMORANDUM

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                 April 24, 2023

Damion Bovell ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Social Security Administration Commissioner's ("the Commissioner") final decision, denying his claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act.  Plaintiff filed a brief supporting his request for review, the Commissioner responded to it, and Plaintiff filed a reply.  For the reasons set forth below, Plaintiff's Request for Review will be granted, and Judgment will be entered in Plaintiff's favor and against Defendant.

**I.        PROCEDURAL HISTORY**[1]

On July 28, 2016, Plaintiff applied for DIB and SSI, alleging disability beginning January 1, 2016, caused by depression, schizophrenia, attention-deficit/hyperactivity disorder (ADHD), post-traumatic stress disorder (PTSD), and bipolar disorder. R. at 76, 177-84. The Social Security Administration (SSA) initially denied Plaintiff's claim on February 7, 2017, id. at 78-81, so he

---

[1] This court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl.'s Br."), Defendant's Response to Request for Review of Plaintiff ("Def.'s Resp."), Plaintiff's Reply Brief ("Pl.'s Reply"), and the administrative record ("R.").

1

requested a hearing. *Id.* at 82. On April 18, 2019, Plaintiff appeared before Administrative Law Judge Regina Warren ("the ALJ") for that administrative hearing. *Id.* at 31. Plaintiff, represented by an attorney, Lucille Brink (Plaintiff's aunt), and vocational expert, Sherry Kristal-Turetzky ("the VE"), testified at the hearing. *Id.* at 32-63. On May 29, 2019, the ALJ, using the sequential evaluation process for disability,[2] issued an unfavorable decision. *Id.* at 26. The Appeals Council denied Plaintiff's request for review on May 14, 2020, making the ALJ's findings the Commissioner's final determination. *Id.* at 7-12.

## II. FACTUAL BACKGROUND

A. <u>Plaintiff's Personal History</u>

Plaintiff, born on December 1, 1996, R. at 18, was 22 years old when the ALJ rendered her decision. R. at 24. He resides with his grandmother and grandfather, who adopted him as a child.

---

[2] The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not an adult claimant is disabled:

> 1. If claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2. If claimant is found not to have a severe impairment which significantly limits her physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3. If claimant is impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4. If claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).
>
> 5. The Commissioner will determine whether, given claimant=s residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

2

R. at 50. Plaintiff has a high school education, consisting of special education classes, and has no past relevant work experience. *Id.* at 23, 193-94.

B.     <u>Plaintiff's Testimony</u>

At the May 29, 2019 administrative hearing, Plaintiff testified regarding limitations that he alleges result from mental impairments and prevent full-time employment. Plaintiff stated his belief that he first started mental health treatment at three years old and was subsequently placed in several mental health hospitals and schools. R. at 35. As a student, Plaintiff stated that he had "authority issues," which combined with his uncontrollable anger, often resulted in school suspensions. *Id.* at 38.

Plaintiff described various incidents as a youth and adolescent in which he engaged in violent behavior toward others as well as self-harm. *Id.* at 36. He has had multiple suicide attempts, beginning in childhood and continuing into adulthood. *Id.* at 39-40. Plaintiff stated that his one long-term friendship is unstable because of fighting. *Id.* at 36-37. His relationships with teachers and family included physical assaults on them. *Id.* at 39-40. He has attacked police officers, which he attributes to "major anxiety." *Id.* at 39.

Plaintiff testified to his history of antipsychotic medications. *Id.* at 36. He also addressed his ongoing sleep issues, which have improved through use of a CPAP machine. *Id.* at 42. Plaintiff hears voices and hallucinates and also experiences paranoia and daily migraine headaches. *Id.* at 40-41, 46, 52.

Plaintiff spent much of his time prior to detention[3] playing video games and watching television. *Id.* at 43. He reported that his cooking was limited to microwaving his meals; he performs no household chores. *Id.* at 46-47. His grandmother does the food shopping; Plaintiff

---

[3] Plaintiff was in detention at Chester County Prison beginning May 24, 2018 for assaulting a police officer and has since been released. R. at 52-54, 359, 670-71. He had not been in any altercations while in detention. *Id.* at 54.

believes that his poor math skills make handling money transactions difficult. *Id.* at 48. He requires frequent reminders to bathe and groom himself. *Id.* at 50. Although Plaintiff has taken public transportation with friends, anxiety prevents solo travel. *Id.* at 49.

C.        <u>Lucille Brink's Testimony</u>

Lucille Brink, Plaintiff's aunt, testified about Plaintiff when he lived with her beginning at age ten. She stated that Plaintiff began mental health treatment around five years old, the same age when his violent behavior began. R. at 57-58. Ms. Brink expressed her fear that Plaintiff's violent behavior would injure her parents—Plaintiff's grandparents. *Id.* at 58. She alleged that Plaintiff engaged in random violent behavior towards her son. *Id.* at 58.

D.        <u>Vocational Expert's Testimony</u>

The ALJ's first hypothetical presented to the VE considered an individual with no exertional limitations; however, from a mental RFC standpoint, the individual could function in a production-oriented job in a low-stress environment, requiring minimal social interaction and decision-making. R. at 59-60. She further elaborated that the job would include the following:

> [l]ittle independent decision making in performing duties; no continuous interaction with the public; could be around coworkers and supervisors in proximity, but would work best on independent, unskilled assignments that require minimal social contact to complete; should not be assigned any complicated tasks; could perform unskilled work without supervision; could concentrate, pace, and persist for two-hour periods with the normal breaks and periods allotted in a standard work day; could tolerate occasional routine workplace changes.

*Id.* at 60. The VE responded that Plaintiff could perform the following jobs at the unskilled[4] and

---

[4] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. §§ 404.1568(a), 416.968(a).

medium[5] or light[6] level: (1) bus cleaner, 300,000 positions nationally; (2) linen or laundry folder, 52,000 positions nationally; and (3) garment sorter, 31,000 positions nationally. *Id.*

The ALJ's second hypothetical asked the VE to consider a person of Plaintiff's exact age and education, with these additional limitations:

> substantial loss in the ability to effectively function when it comes to accepting instructions and responding appropriately to criticisms from supervisors; getting along with coworkers . . . without distracting them or exhibiting behavioral extremes; working in coordination with, or proximity to, others without being distracted by them; and completing a normal work day and work without interruptions from psychologically/intellectually based symptoms; and to perform at a consistent pace without a[n] unreasonable number and length of rest periods or absences that would exceed anywhere from one to two times per month.

*Id.* at 61. The VE responded that there were no jobs in the national economy that an individual with these restrictions could perform. *Id.*

### III. THE ALJ'S FINDINGS

In her decision, the ALJ issued the following findings:

1. Born on December 1, 1996, [Plaintiff] had not attained age 22 as of January 1, 2016, the alleged onset date (20 CFR 404.102, 416.120(c)(4) and 404.350(a)(5)).

2. [Plaintiff] has not engaged in substantial gainful activity since January 1, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. [Plaintiff] has the following severe impairments:

---

[5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c), 416.967(c).

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

    depression/bipolar disorder, post-traumatic stress disorder (20 CFR 404.1520(c) and 416.920(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following restrictions: can function in production-oriented jobs requiring minimal decision-making and minimal social interaction. Requires a low stress work environment; little independent decision-making in performing job duties; no continuous interaction with the public; can also perform [sic] co-workers and supervisors in proximity but would work best in independent unskilled work assignments requiring minimal social contact to complete; should not be assigned any complicated tasks; can perform unskilled work without supervision; can concentrate, pace, and persist for 2-hour periods within normal breaks and periods allotted in a standard workday; can tolerate occasional routine work place changes.

6. [Plaintiff] has no past relevant work (20 CFR 404.1565 and 416.965).

7. [Plaintiff] was born on December 1, 1996 and was 19 years old, which is defined as a younger individual 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. [Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because [Plaintiff] does not have past relevant work.

10. Considering [Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.9696a.

> 11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from January 1, 2016, through the date of this decision (20 CFR 404.350(a)(5), 404.1520(g) and 416.920(g)).

R. at 18-24.

## IV.   DISCUSSION

A.   Standard of Review

Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed if substantial evidence supports them. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Halter*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

Overall, this test is deferential to the ALJ. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). The court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo*, might have reached a different conclusion. *Id.* Indeed, the court may not undertake a *de novo* review of the Commissioner's decision by reweighing the record evidence itself. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Monsour Med. Ctr.*, 806 F.2d at 1190-91. Nor is the court permitted to "impose [its] own factual determinations." *Chandler*, 667 F.3d at 359. *See Burns v. Barnhart*, 312 F.3d

113, 118 (3d Cir. 2002) ("We also have made clear that we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder."). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.	Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that he cannot engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents returning to their past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that the impairment results in functional limitations to performing their past relevant work, then the burden of proof shifts to the Commissioner to prove that work exists in the national economy, which Plaintiff can perform given their age, education, work experience, and residual functional capacity. *See Poulos,* 474 F.3d at 92; *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

C. Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ ultimately determined that Plaintiff does not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. R. at 24. The ALJ concluded that, based on Plaintiff's age, education, work experience, and residual functional capacity (RFC), he could perform several jobs in the national economy at the light or medium exertional level. *Id.*

In his brief, Plaintiff argues that remand is warranted because the ALJ: (1) failed to find that Plaintiff's schizophrenia was a specific severe impairment and found his ADHD not severe, and, therefore, underestimated his mental limitations and overestimated his RFC; (2) erred in finding that Plaintiff's impairments do not meet the requirements of the listing of impairments; (3) erroneously found Plaintiff's testimony inconsistent with the evidence and failed to make any finding regarding the testimony of Ms. Brink; and (4) failed to incorporate all of his credibly established limitations in her RFC finding and hypothetical question to the VE. Pl.'s Br. at 4, 9, 15, 23. The Commissioner denies Plaintiff's assertions. Def.'s Resp. at 4, 6, 10, 12, 14.

1. The ALJ's Determinations and Assessments During the Step Two Evaluation Process Cannot Constitute Reversible Error Because Step Two is a *De Minimis* Screening Device, and the Step Two Evaluation Process Ended in Plaintiff's Favor

Plaintiff argues that the ALJ erred by finding his ADHD not severe and that the ALJ should have listed his schizophrenia as a specific severe impairment. Pl.'s Br. at 4-9. Defendant contends that, if the ALJ erred, that error was harmless. Def.'s Resp. at 7.

The ALJ found that Plaintiff had the following severe impairments: depression, bipolar disorder, and PTSD. R. at 18. She also found Plaintiff's ADHD to be non-severe. *Id.* at 19. The step two determination is "a *de minimis* screening device" designed to quickly "dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). The ALJ

9

here properly assigned viability to those conditions she deemed were based on severe impairments; consequently, at step two, any evaluative error as to those impairments she deemed non-severe was harmless. *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) (non-precedential) ("Because the ALJ found in Salles' favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless."). The ALJ here went on to address the severe impairments she found at step two, as well as several non-severe impairments, including: (1) migraine headaches; (2) mood, developmental, anxiety, and sleep disorders; and (3) depression. R. at 20-23. The ALJ stated that she found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." *Id.* at 22. She did not reject any alleged functional limitation based on a finding that Plaintiff did not have severe ADHD or that Plaintiff was improperly diagnosed with schizophrenia. Instead, she found that, despite the symptoms Plaintiff may reasonably be expected to experience from the alleged impairments, the record did not support that Plaintiff's attention was so impaired, or his psychotic symptoms so debilitating, that he could not perform a limited range of unskilled work. *Id.* at 23-24. Because the ALJ found in Plaintiff's favor at step two, and any error at this step was ultimately harmless, and because the ALJ did consider Plaintiff's non-severe ADHD and schizophrenia beyond step two, this court will not remand on this basis.

2. <u>The ALJ Committed Reversible Error by Failing to Adequately Explain Why Plaintiff Did Not Satisfy "Paragraph C" Criteria</u>

Plaintiff next argues that the ALJ erroneously found that his mental impairments did not meet the requirements of Sections 12.04 or 12.15 of the Listing of Impairments.[7] This court concludes that the ALJ inadequately explained why Plaintiff does not medically meet the criteria

---

[7] Sections 12.04 and 12.15 outline four identical areas of mental functioning, which are to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04(B)(1)-(4); 12.15(B)(1)-(4).

of Listed Impairments ("LI") 12.04 and 12.15.

For an impairment to match a listing, a claimant must show that the impairment meets "'*all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Jones v. Barnhart*, 364 F.3d 501, 504 (3d. Cir. 2004) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original)). It is Plaintiff's burden to demonstrate that his impairments meet the listings. *Rutherford*, 399 F.3d at 551 (explaining that in "the first four steps the burden is on the claimant"); *id.* ("If the claimant satisfies step 3, she is considered per se disabled.").

An ALJ's step three analysis is proper when the "decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that" a claimant does not meet the requirements for any listing. *Jones*, 364 F.3d at 504-05. An ALJ is required to explain why a claimant does not meet or medically equal a listed impairment. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119-20 (3d Cir. 2000). Simply stating the conclusion that the claimant does not meet or equal the relevant listing is inadequate and requires a remand. *Id.* at 120. This court is not empowered to search the record and try to correct the ALJ's failure; the court is only permitted to consider the explanations the ALJ provided to justify her decision. *Fargnoli*, 247 F.3d at 44 n.7 (citing *S.E.C. v. Chenery Corp.*, 318 U.S. 80 (1943)).

The ALJ explained that Plaintiff had only moderate limitations in the four relevant areas of mental functioning and, hence, did not satisfy the B criteria for LI 12.04 and 12.15. R. at 19. However, the ALJ erred by failing to specify how Plaintiff did not meet "paragraph C" criteria.[8] *Cf. Jones*, 364 F.3d at 504-05 (finding that the ALJ adequately explained the step three decision, because the ALJ cited factors appropriate to the germane listings). The *Burnett* Court held that an

---

[8] 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04(C); *see also* § 12.15(C ).

ALJ's conclusory statement is "beyond meaningful judicial review" if an ALJ does not cite specifically listed impairments or explain his or her reasoning. *Id*. at 120. Here, the ALJ merely stated that she had "also considered whether the 'paragraph C' criteria were satisfied. In this case, the evidence fails to establish the presence of the 'paragraph C' criteria." R. at 20. Such a bare conclusory statement violates the Third Circuit's *Burnett* holding. The ALJ neither identified "paragraph C" criteria nor explained which requirements were not satisfied. Hence, the ALJ's decision must be reversed, and the case remanded to the Commissioner, so that the ALJ can explain, using relevant medical evidence, why Plaintiff's impairments do not meet or equal the "paragraph C" criteria.[9]

3. <u>Because the ALJ Properly Weighed and Credited Plaintiff's Testimony, Her Failure to Accord Weight to His Aunt's Testimony is Harmless Error</u>

Plaintiff's third argument contends that the ALJ did not adequately credit his testimony and the testimony of his aunt, Ms. Lucille Brink. Pl.'s Br. at 9, 15. This court finds that the ALJ adequately credited Plaintiff's testimony. Since Ms. Brink's lay testimony essentially mirrored that of Plaintiff, the failure to accord it weight separately is harmless error, and the court will not remand on this basis.

Testimony from a plaintiff regarding pain and other symptoms is entitled to "great weight" when supported by competent medical evidence. *Schaudeck*, 181 F.3d at 433. Social Security Ruling ("SSR") 96-7p, 1996 SSR LEXIS 4, makes clear that an individual's statements about symptoms are not enough to determine disability, but must be corroborated by medical evidence. SSR 96-7p, 1996 SSR LEXIS 4 at *4-5 (1996). In supporting her conclusion that the evidence did

---

[9] The ALJ's failure to provide an adequate explanation for her decision is a legal error, not a factual one. *See Burnett*, 220 F.3d at 119-20 (explaining that an ALJ's failure to supply an explanation for his step three decision renders the decision incapable of meaningful judicial review). As such, this court exercises *de novo*, not deferential, review over that question. *Poulos*, 474 F.3d at 91.

not corroborate Plaintiff's subjective complaints to the degree and intensity he claimed, the ALJ cited treatment records from the time prior to and during Plaintiff's detention.

First, the ALJ correctly supported her finding that Plaintiff's ADHD (and bipolar disorder) were being effectively managed and were, therefore, non-severe. R. at 19. She cited his intact memory, judgment, and thought process as supporting a finding that Plaintiff could work with minimal decision-making and social interaction. *Id.* at 22-23. The ALJ also noted that Plaintiff's mental status examinations were "within normal limits" and that "[h]e has been fully oriented and . . . [was not] having suicidal/homicidal ideation." *Id.* at 23.

Second, the ALJ adequately supported her finding that Plaintiff's schizophrenia was being effectively managed with medication. *Id.* She cited Plaintiff's mental health examination in 2017 and 2018, which did not show any auditory or visual hallucinations, nor was he experiencing any significant side effects of the medication. *Id.* Even if this court believed that Plaintiff's testimony about his symptoms was more consistent with the record evidence, we are not permitted to reweigh the evidence to reach a different outcome, because the ALJ's findings in this instance are supported by substantial evidence. *See Fargnoli*, 247 F.3d at 38 ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."). Therefore, this court finds that the ALJ properly weighed Plaintiff's testimony in light of other countervailing evidence and will not disturb the ALJ's findings.

An ALJ must provide a reason for discounting probative evidence. *See Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons

for rejection were improper." (citation omitted)). Because Plaintiff resided with his aunt for a period of time during his childhood, her testimony, while duplicative, was nonetheless probative and relevant. *See Burnett*, 220 F.3d at 122 (explaining that duplicative lay witness testimony can bolster plaintiff's credibility); *Van Horn v. Schweiker*, 717 F.2d 871, 873-874 (3d Cir. 1983) (finding that an ALJ should find that a witness lacked credibility before wholly disregarding their testimony). Therefore, the ALJ's failure to assign Ms. Brink's lay testimony weight was error. This court next looks to whether the error was harmless.

An error is generally "harmless" when, despite the technical correctness of a plaintiff's legal contention, there nonetheless remains "no set of facts" supporting entitlement to benefits. *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011) (quoting *Renchenski v. Williams*, 622 F.3d 315, 341 (3d Cir. 2010). Stated differently, "remand is not required . . . [if] it would not affect the outcome of the case." *Rutherford*, 399 F.3d at 553, 556. "The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009); *see Woodson v. Comm'r of Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir. 2016) (non-precedential) (citing *Shinseki*, 556 U.S. at 409) (stating a plaintiff must cite specific evidence demonstrating her claimed error caused harm).

While the ALJ did not explicitly discuss the lay testimony of Ms. Brink, this court notes its brevity, and that its substance is both duplicative of, and outweighed by, the ALJ's extensive examination of Plaintiff regarding the age at which he started treatment and his numerous past violent incidents. The ALJ cites Plaintiff's treatment history and violent incidents in her findings. R. at 21. Both were similarly addressed in Plaintiff's testimony, and again in his aunt's testimony. *See Crosby v. Barnhart*, 98 F. App'x 923, 926 (3d Cir. 2004) (non-precedential) (holding that the ALJ's rejection of plaintiff's fiancé's affidavit when the information in the affidavit mirrored the

information provided by plaintiff was harmless error). Unlike Plaintiff's testimony, however, which covers his childhood through adulthood, it is unclear whether Ms. Brink was also discussing Plaintiff's behavior beyond childhood and through the relevant period. In contrast, the ALJ cited the following considerations weighing against finding Plaintiff disabled:

> [Plaintiff] has not had an inpatient psychiatric hospitalization, partial hospitalization, been admitted to a day program, nor had an emergency room visit. His treatment has been conservative in nature, consisting of psychotherapy and psychotropic medication. He has been fully oriented and has [not been] having suicidal/homicidal ideation. With regard to psychotic symptoms, it was noted that [Plaintiff] has been "[n]ot really seeing things or hearing voices on Haldol." There is no evidence in the medical record that he has experienced any significant side effects of medication. There is no Medical Source Statement in the record.

R. at 19 (citations omitted).

In this case, the omitted lay testimony provided by Ms. Brink is substantially cumulative of Plaintiff's testimony, which the ALJ adequately credited and weighed against other evidence. Furthermore, even if the ALJ had done the same with respect to Ms. Brink's testimony, its applicability to the relevant period is ambiguous at best. This is largely because she does not speak directly to Plaintiff's condition during the relevant period. The court, therefore, finds that any error by the ALJ in not explicitly discussing and assigning weight to her testimony was harmless and does not warrant remand on this basis.

4. <u>The ALJ Properly Accounted for Plaintiff's Credible Limitations in Formulating His RFC and Therefore Had No Obligation to Credit the VE's Response to a Question About an Individual with Greater Limitations</u>

Plaintiff finally argues that the ALJ erred by not including all of his credibly established limitations in her RFC and hypothetical to the VE. Pl.'s Br. at 23. Plaintiff here offers no record evidence supporting the inclusion of additional limitations that would have warranted the ALJ to accept the second hypothetical. *See Salles*, 229 F. App'x at 148 (non-precedential) (suggesting

15

that "[a] lack of evidentiary support in the medical record is a legitimate reason for excluding claimed limitations from the RFC").  The ALJ need only include credibly established limitations in his RFC assessment.  *See Rutherford*, 399 F.3d at 552.  Because the VE included all of Plaintiff's credible limitations, she appropriately did not accept the VE's second hypothetical, which included more significant limitations.  Therefore, this court will not remand on this basis.

## V.   CONCLUSION

A thorough review of the relevant law and the record indicates that substantial evidence does not support the entirety of the ALJ's decision.  Remand is warranted for the ALJ to explain why Plaintiff did not satisfy "paragraph C" criteria.  Accordingly, Plaintiff's Request for Review is granted.  An implementing Order and Order of Judgment follow.